239 Miss. 35 (1960)
120 So.2d 772
STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS
v.
ROGERS.
No. 41504.
Supreme Court of Mississippi.
May 23, 1960.
Watkins & Eager, Heidelberg, Woodliff, Castle & Franks, Jackson, for appellant.
*37 Lee, Moore & Countiss, Jackson; Coleman & Dabbs, Ackerman, for appellee.
*38 LEE, J.
The State Board of Registration for Professional Engineers sought to enjoin Owen F. Rogers from the practice of engineering, or in the use of the title "Mechanical Designer" or any other title which might imply that he is a professional engineer, or from performing any service or work recognized by engineering or educational authorities to constitute engineering. At the conclusion of the evidence, the court made a written finding of law and facts under which he was of the opinion that the defendant should be enjoined from the use of the term "Mechanical Designer" or any other title in connection with his work from which it might be implied that he is a professional engineer, and from doing mechanical work or mechanical engineering for private individuals or members of the general public. But the court was of the further opinion that it should decline to enjoin Rogers from performing mechanical work or mechanical engineering for registered architects or engineers under their supervision and control where such architects or *39 engineers take the responsibility for the work and turn it out under their title block, name, and seal. From the decree entered in accordance with such finding, the complainant appealed.
Appellant says that there was no issue of fact before the court. It maintains that Rogers was practicing engineering as an independent contractor, and that, as such, he was not exempt from registration; and that the public should be protected from unlicensed practitioners.
Rogers had a business office at 414 South State Street in the City of Jackson. It consisted of one room and a small alcove, with a typewriter and three drafting boards, in which he and three other people, including his minor son, worked. The following words were on the office door: "Owen F. Rogers, Mechanical Designer". A like title appeared opposite his name in the telephone book; and he carried his office bank account in that name. He was not licensed either as an architect or an engineer. However he seems to have acquired considerable knowledge in regard to mechanical work with particular reference to heating, ventilation, air conditioning, and plumbing within buildings; and he did work of that kind under instructions from architects and engineers. He of course had no title block or seal of his own. The plans, which he thus designed, were temporary or preliminary. They were subject to change or discard by the employing architect or engineer, as the case might be. His employer, whether architect or engineer, told him what to do, and his work was subject to approval by such employer. He had neither solicited from, nor done any work for, the general public. He worked only for architects or engineers.
The complainant introduced architectural plans in several instances for buildings on which Rogers, under instructions from the architects, had worked on the preliminary design for heating, ventilation, air conditioning and plumbing, but, in each instance, the plans, as finally approved, bore the title block or seal of the architect who *40 was employed on the project. Several engineers, testifying as experts, denominated this work as mechanical engineering, whereas Rogers called it mechanical work. Architects, testifying as expert witnesses for the defendant, said that the mere doing of mechanical work did not stamp the worker as a mechanical engineer and that the work of Rogers was in fact architectural within such plan.
One prominent architect, in explaining the difference between architecture and engineering, said in effect that the entire structure and all of its component parts is architecture, if such structure is to be utilized by human beings as a place of work or assembly. He pointed out that, if the authorities were going to erect a courthouse such as the building in which the cause was being tried, they would obtain the service of an architect; but, if it was proposed to construct a power plant such as Rex Brown, they should employ an engineering firm.
It appeared that, in practice, the owner determines whether he will employ an architect or an engineer. If an architect is engaged, it is incumbent on him to secure such engineering help as he may desire; and he pays for the same out of his fee. The architect, under the customary contract, has general supervision of the work.
All of the architects and those who were registered as both architect and engineer agreed that the overall plan of a building and its contents and accessories is that of the architect and that he has full responsibility therefor. As one witness answered it, he is the commander in chief.
To practice his profession, an engineer must be registered. Section 8791-01, Code of 1942, Recompiled. By Section 8791-02 thereof the practice of engineering is defined as follows: "The term `Practice of Engineering' within the meaning and intent of this act shall mean any professional service or creative work requiring engineering education, training, and experience and the application of special knowledge of the mathematical, physical, and engineering sciences to such professional services *41 or creative work as consultation, investigation, evaluation, planning, design, and supervision of construction for the purposes of assuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects.
"A person shall be construed to practice or offer to practice engineering within the meaning and intent of this act, who practices any branch of the profession of engineering; or who, by verbal claim, sign, advertisement, letterhead, card, or in any other way represents himself to be a professional engineer; or through the use of some other title implies that he is a professional engineer; or who holds himself out as able to perform, or who does perform any engineering service or work or any other professional service designated by the practitioner or recognized by educational authorities as engineering."
By Section 8791-22 thereof, the applicability of the act, it is provided as follows: "This act shall not be construed to prevent or to affect: (a) The practice of any other legally recognized profession or trade, such as: (1) * * *; (2) Architects who are registered under the provisions of chapter 133, laws of 1928, House Bill Number 61; * * * (d) The work of an employee or a subordinate of a person holding a certificate of registration under this act, or an employee of a person practicing lawfully under paragraphs (b) or (c) of this section; provided such work does not include final designs or decisions and is done under the responsibility, checking and supervision of a person holding a certificate of registration under this act or a person practicing lawfully under paragraphs (b) or (c) of this section; * * * *." (Emphasis supplied.)
Architects also have to be licensed. Section 8632-01, Code of 1942, Recompiled. By Section 8632-02 it is provided as follows: "(a) As used in this act `board' means the State Board of Architecture. (b) `Architect' *42 means a person who engages in the practice of architecture as hereinafter defined. (c) A person engaging in the practice of architecture within the meaning and intent of this act, is one who holds himself out as able to perform any professional service such as planning, design, including aesthetic and structural designs, and consultation in connection therewith, or responsible supervision of construction, in connection with (except as specifically exempted herein) any buildings, structures, or projects, or the equipment or utilities thereof, or the accessories thereto, wherein the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of the art and science of construction based upon the principles of mathematics, aesthetics and the physical sciences; provided that nothing in this definition shall be construed as encompassing or limiting the practice of engineering as that practice is provided for under the laws of this state." (Emphasis supplied.)
By Section 8632-10 of the Code it is provided in part as follows: "Nothing contained in this act shall prevent draftsmen, students, clerks-of-work, superintendents and other employees of those lawfully practicing as registered architects under the provisions of this act from acting under the instructions, control or supervision of their employers; or to prevent the employment of superintendents of the construction, enlargement or alterations of buildings or any appurtenances thereto; or to prevent such superintendents from acting under the immediate personal supervision of the registered architect by whom the plans and specifications of any such building, enlargement or alteration work were prepared." (Emphasis supplied.)
From the statutes, referred to above, it will be seen that the practice of engineering is not to be construed as preventing or affecting the work of registered architects; and neither is the practice of architecture to be construed as encompassing or limiting the practice of *43 engineering. Obviously there is some overlap in the work of these two professions.
The presumption is that, if an architect is licensed and registered, he has the capability of planning a building and supervising its construction in accordance with his plans. Consequently if he undertakes a project, he alone will be held responsible therefor. If he delegates any part of his duties, he does so at his peril. It is doubtless true in all professions that practitioners are often able to gauge the aptitude, ability, and dependability of their associates or helpers, with the result that they delegate to such associates or helpers the discharge of very important duties. Doctors often use the services of a radiologist and technician, not admitted to practice medicine, in making a diagnosis and in carrying out a prescribed treatment; but such helpers do not thereby violate the statute against the unlawful practice of medicine. Likewise an efficient legal secretary, at the direction of her employer, might take from the records the necessary information from which the attorney would assume the responsibility of certifying to the state of a title, but she would not, on that account, be practicing law. Her work would be merely an aid to her employer, who would be responsible if the work was not true and correct. In both instances, the radiologist and technician and the secretary would be working under instructions, without contractual relations with the patient or client, as mere helpers. They would perform a duty for their employer, who might either accept or reject the work.
(Hn 1) Inasmuch as Rogers' work was supervised and controlled by the architect or engineer for whom he was doing the work, obviously his status was not that of an independent contractor or practitioner of engineering, but rather a helper or employee. Kisner v. Jackson, 159 Miss. 424, 132 So. 90; Crosby Lumber and Manufacturing Company v. Durham, 181 Miss. 559, 179 So. 285; Laurel Daily-Leader, Inc. v. James, 224 Miss. 654, 80 So.2d 770.
Rogers, in the mode and manner of his work for architects *44 and engineers, did not violate the law against the unlawful practice of engineering. In thus doing his work, he was acting within the meaning of the quoted provision of Section 8632-10, supra, while engaged by an architect, just as he would be working within the meaning of the quoted provision of Section 8791-22 (d), supra, if his services were in fact being utilized by an engineer. The legislature, purposefully indeed, did not require, as a condition precedent to the practice of either of these learned professions, that the holder of a license should draw every line or measure every angle involved in the architecture or engineering, as the case might be, at hand. It was recognized that details might perhaps, with perfect propriety, be entrusted to competent employees or subordinates. This salutary provision seems to have permeated the legislative thinking because the same idea in different words appears in these two sections.
From which it follows that the learned chancellor correctly interpreted the law as applied to the peculiar facts of this case, and the decree of the court should therefore be affirmed.
Affirmed.
McGehee, C.J., and Hall, Ethridge and Gillespie, JJ., concur.

ON SUGGESTION OF ERROR AND MOTION TO CORRECT JUDGMENT
GILLESPIE, J.
Of the several points raised in the suggestion of error only one requires discussion. The same point is raised in appellant's motion to correct judgment. Appellant cites Section 8923-51, Mississippi Code of 1942, which authorizes any state board authorized to hold examinations and grant license to practice any profession to bring suit in the proper county to enjoin and prohibit any person from unlawfully practicing a profession. The statute provides, "... and no bond shall be required, *45 and no damages, fees or other costs shall be taxed against said board for the bringing of such suit."
Appellant contends (1) that the lower court unlawfully taxed a part of the costs against appellant (the cost of its witnesses), and (2) this Court unlawfully taxed all the costs of appeal against appellant. Appellant argues that it should not be taxed with any costs whatever.
We have carefully considered the statute relied upon by appellants as to whether it applies to ordinary court costs. It provides that "... no damages, fees or other costs shall be taxed against said board for the bringing of such suit." (Emphasis added) The legislature did not indicate what it meant by "other costs", and it evidently meant something different from the preceding "damages, fees" but of the same general category. It used the phrase, "... for the bringing of the suit". It did not name court costs incurred in maintaining the suit. It seems that the intent of the legislature was to exempt professional boards from being required to pay damages, fees and other items of the same category by reason of bringing the injunction suit. It apparently did not intend to exempt the boards from paying court costs incurred in maintaining the suit if the board loses the suit.
Section 1572, Mississippi Code of 1942, provides that the state, counties, municipalities, state boards, and certain officers shall not be required to secure or pay costs before commencing a suit. It does not exempt the payment of costs.
(Hn 2) If we construe the statute according to appellant's contention it would permit the various professional boards to invoke the processes of the courts and leave the court officials with no source from which to collect costs if the board loses the suit. The statute should not be so construed unless it clearly and expressly relieves such boards from the payment of court costs. When the statute is considered in the light of the general statutes relating to costs, we are forced to the conclusion *46 that it was not the intent of the legislature to exempt said boards from the payment of ordinary court costs when they are otherwise taxable against such boards.
What has been said disposes of the matter of costs in the trial court and those incurred on appeal.
Suggestion of error and motion to correct judgment overruled.
All Justices concur, except Roberds, Holmes and Arrington, JJ., who took no part.