JOHN T. HIGH, JOHN D. CONSTABILE, KENNETH W. RAMSEY, C. RAY LAWRENCE, and JAMES S. BAILEY, Comprising the NORTH CAROLINA STATE BOARD OF EXAMINERS IN OPTOMETRY v. RIDGEWAY'S OPTICIANS.

(Filed 1 February 1963.)

**1. Physicians and Surgeons § 1—**

A dispensing optician, G.S. 90-235, does not engage in the unlawful practice of optometry, G.S. 90-114, in using a keratometer in measuring the curvature of the cornea and in fabricating, fitting, and inserting contact lenses onto the eyes of a patient so long as the refraction of the lenses is controlled by the prescription of an examining physician or oculist and the optician requires the patient to return to the examining physician or oculist for verification.

**2. Appeal and Error § 22—**

A single exception to the findings of fact and conclusion of law of the lower court presents for review only whether the court's conclusion of law is supported by the findings.

APPEAL by North Carolina State Board of Examiners in Optometry (hereinafter referred to as plaintiff) from *Mallard, J.,* May Civil Term 1962 of Wake.

This cause came on to be heard, and by consent of the parties was heard, before his Honor, Raymond B. Mallard, Judge Presiding, without a jury.

The plaintiff instituted this action, alleging that the defendant was engaged in the illegal, unlawful, and unauthorized practice of optometry, and further alleging that the defendant had violated various provisions of Chapter 90, General Statutes of North Carolina, particularly sections 114, 115, 125, 126 and 126.1, in that the defendant did measure and examine the eyes of certain persons for the purpose of determining whether such individuals could or should use contact lenses, in violation of the laws of the State of North Carolina. The plaintiff prayed that the defendant be permanently and perpetually enjoined and restrained from engaging in the practice of optometry within the State of North Carolina.

The defendant denied all allegations with reference to examining eyes for the purpose of determining whether or not the individual could or should use contact lenses. The defendant admitted "that it has on the prescription of medical doctors and/or oculists and under their direction actually measured the size and radius of curvature of the cornea of prospective customers, and based upon said measurements and its judgment has determined what it deemed to be the appropriate size and curvature of the contact lenses suitable for use

by the customer, and thereafter inserted and fitted contact lenses into the eyes of certain persons * * *."

Among other things, the court found the following pertinent facts: " * * * (T)hat the defendant has not by and through its officers and agents measured and examined eyes of persons coming to the establishment of the defendant for the purpose of determining whether said persons could or should use contact lenses; and the court further finding as a fact that defendant has on the prescription of medical doctors and oculists and under their direction actually measured the size and radius of curvature of the cornea of prospective customers, and based upon said measurements and its judgment has determined what it deemed to be the appropriate size and curvature of contract lenses suitable for use by the customers and thereafter fitted contact lenses into the eyes of such customers.

"Upon the foregoing findings the court concludes as a matter of law that the conduct of the defendant as above set forth does not consist of nor constitute engaging in the unlawful practice of optometry nor the unlawful practice of a dispensing optician, and that the plaintiff is not entitled to the restraining order prayed for."

Judgment was entered accordingly and the plaintiff appeals, assigning error.

*Holding, Harris, Poe & Cheshire for defendant.*
*Teague, Johnson & Patterson; Robinson O. Everett for plaintiff.*

DENNY, C.J.   The determinative question on this appeal is whether or not the use of a keratometer by a duly licensed optician in the measurement of the curvature of the cornea, and the subsequent fabrication and fitting of contact lenses as prescribed by a medical doctor or oculist, constitute the unlawful practice of optometry as defined in G.S. 90-114.

G.S. 90-114 defines the practice of optometry as follows: "The practice of optometry is hereby defined to be the employment of any means, other than the use of drugs, medicines, or surgery, for the measurement of the powers of vision and the adaptation of lenses for the aid thereof; and in such practices as above defined, the optometrist may prescribe, give directions or advice as to the fitness or adaptation of a pair of spectacles, eyeglasses or lenses for another person to wear for the correction or relief of any condition for which a pair of spectacles, eyeglasses or lenses are used, or to use or permit or allow the use of instruments, test cards, test types, test lenses, spectacles or eyeglasses or anything containing lenses, or any device for the pur-

pose of aiding any person to select any spectacles, eyeglasses or lenses to be used or worn by such last mentioned person or by any other person."

There is no attack made on the defendant or its officers and agents challenging their competency as opticians. The evidence tends to show that the defendant has not by or through its officers and agents measured and examined the eyes of persons for the purpose of determining whether or not such persons could or should use contact lenses, and the court below so found. Furthermore, there is no evidence on this record tending to show that the defendant by and through its officers and agents has ever examined the eyes of persons for the purpose of measuring their powers of vision to determine whether or not they need to wear eyeglasses or lenses of any kind.

The evidence further tends to show that the defendant's officers and agents who fill prescriptions written by medical doctors or oculists for ordinary spectacles or contact lenses, are duly licensed opticians, and that the defendant is engaged in the business of a "dispensing optician" within the meaning of the statute G.S. 90-235.

The last cited statute reads as follows: "Within the meaning of the provisions of this article, the term 'dispensing optician' defines one who prepares and dispenses lenses, spectacles, eyeglasses and/or appurtenances thereto to the intended wearers thereof on witten prescriptions from physicians or optometrists duly licensed to practice their professions, and in accordance with such prescriptions interprets, measures, adapts, fits and adjusts such lenses, spectacles, eyeglasses and/or appurtenances thereto to the human face for the aid or correction of visual or ocular anomalies of the human eye. The services and appliances related to ophthalmic dispensing shall be dispensed, furnished or supplied to the intended wearer or user thereof only upon prescription issued by a physician or an optometrist; but duplications, replacements, reproductions or repetitions may be done without prescription, in which event any such act shall be construed to be ophthalmic dispensing, the same as if performed on the basis of a written prescription."

G.S. 90-236 defines what constitutes practicing as a dispensing optician as follows: "Any one or combination of the following practices when done for pay or reward shall constitute practicing as a dispensing optician: Interpreting prescriptions issued by licensed physicians and/or optometrists; fitting glasses on the face; servicing glasses or spectacles; measuring of patient's face, fitting frames, compounding and fabricating lenses and frames, and any therapeutic device used or employed in the correction of vision, and alignment of frames to the face of the wearer."

We think it is apparent from an examination of our statutes defining the practice of optometry and the business of a dispensing optician that the General Assembly has not expressly authorized either the optometrist or the optician to fit contact lenses to the human eye, but that the general terms of the statutes governing both are broad enough to authorize the optometrist to do so and to authorize the dispensing optician to do so upon prescription of a physician, oculist or optometrist.

The practice of optometry has been regulated by statute in this State since the enactment of Chapter 444 of the Public Laws of 1909, codified with amendments in G.S. 90-114 through G.S. 90-128. Likewise, dispensing opticians have been regulated by law in North Carolina since the adoption of Chapter 1089, Session Laws of 1951, codified as G.S. 90-234 through G.S. 90-255.

In 70 C.J.S., Physicians and Surgeons, Section 10 f. (2), page 842, *et seq.*, it is said: "Under statutes which expressly require a license or certificate for the practice of optometry a person may be required to obtain a license only where he performs such acts or services as are within the customary sphere of the practice of optometry. The legitimate scope of the practice of an optometrist, within licensing statutes, is the measurement of the refractional abnormalities of the eye and the prescription, and sometimes the grinding, of the lenses to correct them, or, as otherwise stated, the scientific professional examination of eyes and vision and the furnishing of remedies including lenses for the correction of abnormal conditions. * * *

"An optician practicing his trade in accordance with the limitations imposed by statute is not engaged in the practice of optometry so as to be required to hold a license therefor except where he illegally holds himself out as engaged in such practice. The mere duplication of ophthalmic lenses or the duplication or replacement of a frame or mounting for such lenses does not constitute the practice of optometry within the statute, and the mere fact that a statute provides that a person shall be deemed to be practicing optometry if he duplicates a lense or replaces or duplicates a frame or mounting without a prescription does not make it so unless such duplication or replacement constitutes the practice of optometry within the statutory definition thereof," citing *Palmer v. Smith*, 229 N.C. 612, 51 S.E. 2d 8.

The State of Nevada, Revised Statutes, 637.020, defines a dispensing optician as follows: "* * * 'Dispensing optician' means a person engaged in the practice of ophthalmic dispensing. * * * 'Ophthalmic dispensing' means the practice of filling prescriptions of licensed physicians, surgeons or optometrists, and includes the taking of facial

measurements, fitting and adjustment of lenses or frames, duplication of lenses, and the measurement, fitting or adaptation of contact lenses to the human eye under the direction and supervision of a physician or surgeon licensed in the State of Navada. * * *"

At the time the case of *Palmer v. Smith, supra,* was written there were no statutory provisions in this jurisdiction requiring that a dispensing optician be licensed. The North Carolina State Board of Opticians was created by Chapter 1089 of the Session Laws of 1951, and the General Assembly provided therein, just as we had held in the *Palmer* case, that no prescription is required for a dispensing optician to make "duplications, replacements, reproductions or repetitions * * *, any such act shall be construed to be ophthalmic dispensing, the same as if performed on the basis of a written prescription."

We said in *Palmer v. Smith, supra:* " * * * (S)o long as the optician confines his work to the mere mechanical process of duplicating lenses, replacing or duplicating frames and mountings, 'making mechanical repairs to frames for spectacles,' filling prescriptions issued by a duly licensed optometrist or oculist, and does not in any manner undertake 'the measurement of the powers of vision and the adaptation of the lenses for the aid thereof,' he is not practicing optometry."

A keratometer (or ophthalmometer) is a mechanical instrument or device used for measuring the curvature of the cornea of the human eye. As we interpret the evidence, its use has no relation whatever to the methods used by medical doctors, oculists or optometrists in the measuring of the powers of vision. There is no evidence on the record tending to show that there is any other instrument, device, or method in general use that is better adapted for the purpose of obtaining the curvature of the cornea of the human eye, which information is necessary to properly fabricate a contact lens for the eye.

The appellant relies strongly on the decision in the case of *State ex rel The Oregon State Board of Examiners in Optometry v. Kuzirian,* 228 Ore. 619, 365 P 2d 1046, in which State ORS 683.010 (2) defines the practice of optometry as the "employment of any means other than the use of drugs for the measurement or assistance of the powers or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof."

ORS 683.190 provides: "No person other than a registered optometrist shall accept or offer to accept for purposes of duplication any ophthalmic lens ordinarily used before the human eye for corrective

purposes or for assisting vision. However, any manufacturing, dispensing or surfacing optician may grind or supply any such lens in conformity with the prescription or instruction of any optometrist duly licensed to practice in this state."

In the above *Oregon* case, the Court said: "* * * (E)xcept when acting under direct personal supervision of legally qualified personnel, the defendant is enjoined and prohibited from: '(a) Measuring portions of the cornea of any persons whatsoever, and based upon such measurement and his judgment, determining what he deems to be the appropriate size and curvature of contact lenses suitable for use by said person.' "

The State of Oregon requires no license and has no requirement with respect to skill in order to engage in the practice of a dispensing optician. It is otherwise in North Carolina. Since 1 July 1951, every person before beginning the practice of a dispensing optician must pass an examnation before the North Carolina State Board of Opticians. The examination is confined to such knowledge as is essential to practice as a dispensing optician and shall show proficiency in the following subjects: "Ophthalmic lens surface grinding; Prescription interpretation; Practical anatomy of the eye; Theory of light; Edge grinding; Ophthalmic lenses; Measurements of face; Finishing, fitting and adjusting glasses and frames to face."

The plaintiff appellant herein further cites and quotes voluminously from the opinions of many State Attorney Generals in support of its contention. Such opinions, however, may be persuasive but they are not controlling on the record before us.

It appears that the Supreme Court of Oregon is the only appellate court of last resort in the several states that has heretofore passed on the question presented on this appeal. Even so, the difference in the statutory provisions in Oregon and those in this State with respect to opticians and what they may and may not do are substantially different. In our opinion, so long as the dispensing optician fabricates, fits and inserts contact lenses in the eyes in accordance with the prescriptions of examining physicians or oculists, and requires the patient to return to the examining physician or oculist in order that the writer of the prescription may determine whether or not the prescription has been properly filled and the contact lenses properly measured, fabricated and fitted, such optician is not engaged in the practice of optometry within the meaning of the statute.

As we interpret the evidence on this record, there is always a possibility that a contact lens may cause irritation of the eye regardless of who fabricates and fits it; the lens may scratch the cornea which

may, unless treated, cause an ulcer of the cornea. The physician or oculist routinely, according to the defendant's evidence, ascertains whether or not such a scratch exists by the use of flourescein, which is a dye. The use of such dye is necessary because often small scratches which irritate the eye cannot be discovered in any other way. Neither an optician nor an optometrist is permitted to use any medicine to treat the eye in order to relieve irritation or for any other trouble which requires the use of drugs.

The appellant objects to a dispensing optician being permitted to "insert a contact lens into the eye." It contends this is a hazardous act. Even so, the insertion of a contact lens into the eye and the removal of the lens therefrom are merely routine procedure by the wearer once the lens is properly fabricated and fitted.

We have examined the plaintiff's exceptions and assignments of error with respect to the exclusion and admission of certain evidence. In our opinion, no prejudicial error has been shown in this respect that would warrant another hearing.

Moreover, assignment of error No. 6 is based on an exception to the findings of fact and conclusion of law. We have repeatedly held that a single exception to the findings of fact and the conclusion or conclusions of law present nothing for review except whether or not the court's conclusion or conclusions of law are supported by the findings of fact. *Logan v. Sprinkle*, 256 N.C. 41, 123 S.E. 2d 209, *Kovacs v. Brewer*, 245 N.C. 630, 97 S.E. 2d 96; *Travis v. Johnston*, 244 N.C. 713, 95 S.E. 2d 94; *Burnsville v. Boone*, 231 N.C. 577, 58 S.E. 2d 351; *Wilson v. Robinson*, 224 N.C. 851, 32 S.E. 2d 601.

Based on the facts found, in our opinion, the conclusion reached by the trial judge and the judgment entered pursuant thereto should be upheld, and it is so ordered.

Affirmed.