STATE BOARD OF OPTOMETRY *v.*
CHARLES CHESTER, D.B.A. MERIDIAN OPTICAL DISPENSARY

No. 43198        December 7, 1964        169 So. 2d 468

*Richard A. Billups, Jr.,* Jackson, for appellant.

*Witherspoon & Gibson, Ethridge, Minniece, Bourdeaux & Jones,* Meridian, for appellee.

*Wilson, Branch, Barwick & Vandiver,* Atlanta, Ga., for Guild of Prescription Opticians of America, Inc., Amici Curiae.

McELROY, J.

The State Board of Optometry of Mississippi filed this case in the Chancery Court of Lauderdale County, Mississippi against Charles Chester, d/b/a Meridian Optical Dispensary, seeking to enjoin him from the unlawful practice of optometry in fitting and adapting contact lenses, with or without a prescription from a physician.

The appellants, in their bill of complaint, bill of particulars, and amended bill alleged as follows: Charles Chester, an adult resident citizen of Lauderdale County, Meridian, Mississippi, owns and is doing business under the trade name of Meridian Optical Dispensary, at 818 Twenty-third Avenue, Meridian, Mississippi. He is not licensed as an optometrist or physician and surgeon in Mississippi, but is, nevertheless, examining eyes, prescribing contact lenses, furnishing and fitting contact lenses, thus practicing optometry. Mrs. Charles Chester assists Mr. Chester in the operation and management of the Meridian Optical Dispensary, and she is not licensed as an optometrist or physician and surgeon in Mississippi. Defendant, Charles Chester, advertises through the newspapers, radio and television stations that through the Meridian Optical Dispensary he can conduct eye examinations, prescribe, furnish and fit contact lenses, and holds himself out as, and is, practicing optometry through the Meridian Optical Dispensary. Because of the alleged acts and conduct of defendant great and irreparable injury will result to the public health in the state of Mississippi unless he is enjoined and prohibited from the unlawful practice of optometry in Mississippi.

The complainant prayed that the court issue an injunction prohibiting defendant from the unlawful practice of optometry in the state of Mississippi, and for such general relief as may be proper.

There was a motion for a bill of particulars, which was sustained by the court, and appellant set out fully

the means and methods in which Charles Chester was violating the act defining optometry. He requested no relief other than that requested in the original bill of complaint. In the amended bill, the appellant set out "that the above acts constitute the unlawful practice of optometry whether done with or without a prior examination and prescription from a physician or optometrist." It further stated that "the proper prescribing, fitting and adaption of contact lenses, as above described, can only be performed by a duly licensed optometrist or physician and surgeon, and the defendant and his servants, agents, and employees in performing said acts, as hereinabove set out, without being so licensed as an optometrist or physician and surgeon, are unlawfully engaged in the practice of optometry."

Mississippi Code Annotated sections 8832, 8833, 8845 and 8888 (1956) define the practice of optometry and the practice of medicine.

§ 8832. Optometry — practice of defined.

The practice of optometry is defined to be the application of optical principles, through technical methods and devices in the examination of human eyes for the purpose of ascertaining departures from the normal, measuring their functional powers and adapting optical accessories for the aid thereof.

§ 8833. Who may practice — examination and license.

It shall not be lawful for any person in this state to engage in the practice of optometry or to hold himself out as a practitioner of optometry, or attempt to determine by an examination of the eyes the kind of glasses needed by any person, or to hold himself out as able to examine the eyes of any person for the purpose of fitting the same with glasses, excepting those hereinafter exempted, unless he has first fulfilled the requirements of this chapter and has received a certificate of licensure from the state board of optometry created by this chapter, nor shall it be

lawful for any person in this state to represent that he is the lawful holder of a certificate of licensure such as providing for in this chapter, when in fact he is not such lawful holder or to impersonate any licensed practitioner of optometry, or to fail to register the certificate as provided by law.

§ 8845. License does not entitle to treat with drugs or medicines.

Nothing in this chapter shall be construed as conferring on the holder of any certificate of licensure issued by said board the title of doctor, oculist, ophthalmologist, or any other word or abbreviation indicating that he is engaged in the practice of medicine or surgery, or the treatment or the diagnosis of diseases of, or injuries to the human eye, or the right to use drugs or medicines in any forms for the treatment or examination of the human eye.

§ 8888. Practice of medicine defined.

The practice of medicine shall mean to suggest, recommend, prescribe, or direct for the use of any person, any drug, medicine, appliance, or other agency, whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body, or for the cure or relief of any wound or fracture or other bodily injury or defomity, or the practice of obstetrics or midwifery, after having received, or with the intent of receiving therefor, either directly or indirectly, any bonus, gift, profit or compensation; provided, that nothing in this section shall apply to females engaged solely in the practice of midwifery.

A lengthy trial was held. Several amicus curiae briefs were filed by the Guild of Prescription Opticians of America, the Eye, Ear, Nose and Throat Association of Mississippi, and the Mississippi State Medical Association.

The appellee and cross-appellant denied all allegations except the one charging him with violation the optometry

law of Mississippi, but admitted that he had fitted contact lenses on prescription of medical doctors, ophthalmologists and oculists, under their direction had done mechanical work necessary to fit these lenses, and under their direction made certain measurements of the cornea of prospective customers under the prescriptions furnished him.

Much testimony was offered in the trial. The general testimony of the witnesses was as follows:

Chester, as adverse witness, described the procedure they followed in fitting contact lenses and how, by the use of trial contact lenses they finally determined the proper size, curvature, edges and power of the contact lenses to be ordered from the laboratory after making the necessary changes to convert the prescription for spectacles to contact lenses. During this process, they, Mr. and Mrs. Chester, repeatedly applied the trial contact lenses to the cornea and evaluated the fit and visual acuity. After the contact lenses were determined and ordered from the laboratory and were received, they again placed them on the cornea of the eye to evaluate the fit and determine what changes, if any, were to be made, and again tested the visual acuity of the customer. In describing these procedures Chester frequently spoke of ''fitting'' the contact lenses to the cornea and on at least one occasion spoke of ''diagnosing the fit.''

Dr. Louis Embry, Jr., of Laurel, optometrist with many years experience and training in fitting contact lenses, testified that upon going to the defendant's place of business they took his prescription from his spectacles and described the procedures followed in fitting him with contact lenses in much the same way as previously described by defendant Chester. Dr. Embry then described the instruments used by the defendant in fitting him with contact lenses, and then described what in his opinion were the optical instruments necessary for the proper fitting of contact lenses as well as the procedures

used by him in the fitting of contact lenses, and in conclusion expressed his opinion that the procedures used by Chester constituted the practice of optometry.

Dr. Clark, optometrist of Meridian, and Dr. Muir, optometrist of Cleveland, Mississippi, stated they had heard the testimony of both Mr. Chester and Dr. Embry, and in their opinion Mr. Chester was practicing optometry in the fitting of contact lenses.

The depositions of Drs. Neal, Bailey, Eure, and Stewart, all widely known optometrists, were introduced in evidence, and they all stated that if the facts of the fitting of contact lenses by defendant Chester were proved to be as related in the bill of particulars and amended complaint, in their opinion Chester was practicing optometry.

Appellee then introduced Dr. Samuel Johnson, ophthalmologist of Jackson, Mississippi, who testified that he was secretary of the Eye, Ear, Nose and Throat Association, and that there were approximately fifteen board ophthalmologists in Mississippi, five of them practicing in Jackson. He stated he had heard the testimony of Mr. Chester and of Dr. Embry, and that in his opinion many of the procedures used by Mr. Chester in fitting contact lenses involved the exercise of professional judgment, which in his opinion was violative only of the Medical Practice Act in Mississippi, since he felt it was not proper for optometrists to fit contact lenses because of the limitation expressed in the optometry law of "diagnosing diseases," as he construed it. He further stated that in his opinion any physician should be permitted to use any optician or technician whom he considered to be qualified to assist him in fitting contact lenses, even though such optician or technician may be in business for himself. He stated that in his fitting of contact lenses he used such an optician, who had his office on another floor in the same building. He further stated that he spent approximately one and

a half hours of his personal time with each contact lenses patient, with the balance of the fitting time spent with the above-referred-to optician.

Dr. McCullough, ophthalmologist, Jackson, Mississippi, testified that he had an employed optician in his office to assist him in fitting contact lenses; that he was likewise of the opinion that Mr. Chester in fitting contact lenses was using a number of procedures which involved professional judgment and were, in his opinion, violative of the Medical Practice Act of Mississippi. He felt, as did Dr. Johnson, that optometrists are not qualified to fit contact lenses. His further answers and opinions were the same generally as those given by Dr. Johnson.

Several other witnesses testified to practically the same as the above witnesses.

We have no laws in Mississippi, as some states do, governing the practice of opticians. Nowhere in our law is there any reference to contact lenses.

Several optometrists testified as to the general practice of optometry, and told why they believed the appellee was practicing optometry. Several medical doctors, including ophthalmologists and oculists, testified that they had sent the defendant several prescriptions, and under their directions and fittings he had properly obtained the contact lenses, made the proper tests, inserted the lenses in the eye, and done certain things that the ordinary physician is not equipped to do, and that the appellee under their prescriptions had given perfect satisfaction as to the proper fitting of the contact lenses. On the other hand, the optometrists testified that the method used by Chester in fitting Dr. Embry of Laurel, Mississippi, in taking the glasses themselves and from the measurements used with the glasses and the method he used in measuring the cornea of the eye, was practicing optometry.

The court in its decree enjoined Chester from adapting and fitting contact lenses without a prescription and the supervision of an optometrist, ophthalmologist, oculist or physician. The court refused to grant an injunction against the appellee, an optician, from fitting and adjusting contact lenses, and thereafter refused to grant an injunction against the appellee from fitting and adjusting contact lenses under a prescription of an optometrist, ophthalmologist, oculist or physician, but did enjoin him from holding himself or the Meridian Optical Dispensary out of the public in advertising as being engaged in the practice of optometry.

The appellant assigns as error: ''The lower court erred in refusing to grant an injunction against Charles Chester and the Meridian Optical Dispensary from fitting and adjusting contact lenses under prescription of a doctor, ophthalmologist or optometrist, after finding such delegation of authority to an optician to do so was unwarranted under the law in this state.''

The cross-appellant assigns as error: The court erred (1) in granting an injunction against Charles Chester because the undisputed proof shows the acts complained of were done only one time and then by entrapment and misrepresentation; and (2) in enjoining defendant from advertising, specifying certain exhibits of the complainant's bill of particulars.

The Court is of the opinion that this case should be affirmed, and assignments for both the appellant and appellee and cross-appellant should not be sustained.

██ █ We are of the opinion that as long as the dispensing optician fabricates, fits, and inserts contact lenses in the eyes in accordance with the prescriptions of an examining optometrist, ophthalmologist, oculist or physician, and requires the patient to return to the examining optometrist, ophthalmologist, oculist or physician in order that the writer of the prescription may determine whether or not the prescription has been prop-

erly filled and the contact lenses properly measured, fabricated and fitted, such optician is not engaged in the practice of optometry within the meaning of the statute. As we interpret the evidence from this record, there is always the possibility that contact lenses may cause irritation of the eye, regardless of who fabricates or fits them. The lenses may scratch the cornea, and unless the scratch is treated, it may cause an ulcer of the cornea. The optometrist, ophthalmologist, oculist or physician, according to the evidence, routinely ascertains whether or not such a scratch exists by the use of certain fluoresceins, which are dyes. The use of such dye, according to the evidence, is necessary because often small scratches which irritate the eye cannot be discovered in any other way. Neither an optician nor an optometrist is permitted to use any medicine to treat the eye in order to relieve irritation or for any other trouble which requires the use of drugs.

The appellant objects to the dispensing optician being permitted to "insert contact lens into the eye." It contends this is a hazardous act and one that should be done by only an optometrist, physician, ophthalmologist or oculist. Even so, the insertion of contact lenses into the eye and the removal of the lenses therefrom are merely routine procedures by the wearer once the lenses are properly fabricated and fitted. High v. Ridgeway's Opticians, 258 N.C. 626, 129 S.E. 2d 301 (1963). We feel that as long as appellee does what under the prescription amounts to no more than a mechanical adjustment and fittings under a doctor's or optometrist's supervision and control, he is practicing neither optometry nor medicine. State Board of Registration for Professional Engineers v. Rogers, 239 Miss. 35, 120 So. 2d 772 (1960).

The only interpretations we can go by are those prescribed by the legislature in defining optometry and the

practice of medicine. See State Board of Optometry v. Orkin, 162 So. 2d 883 (Miss. 1964).

■■■ The cross-appellant objects to the enjoining of the appellee's advertising the sale of contact lenses. In the modern method of sale, it is proper to advertise as long as the advertisements are in accordance with the law. As long as appellee advertises his wares to be sold under the prescription of an optometrist or doctor, we hold that he is advertising within the law. If the advertisements are so qualified we do not believe that the injunction of the court was made to apply.

There were several matters made issues in the trial of this case which we do not believe are applicable under the bill of complaint. We believe they are matters that should be settled either by proper suits in the courts or by the legislature, and therefore they are not matters in issue before this Court.

From the above it follows that the learned chancellor correctly interpreted the law as it applied to the facts in this case, and the decree of the court as to both appellant and cross-appellant should therefore be affirmed.

Affirmed.

*Lee, C. J., and Rodgers, Jones and Brady, JJ.,* concur.