**COMMONWEALTH of Kentucky on relation of the KENTUCKY BOARD OF OPTOMETRIC EXAMINERS, Appellant,**

v.

**ECONOMY OPTICAL COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

April 25, 1975.

William E. Johnson, Frankfort, for appellant.

Irwin G. Waterman, Morris, Garlove, Waterman & Johnson, Shelton R. Weber, Handmaker, Weber & Meyer, Robert P. Hastings, Hardy, Logan & Hastings, Louisville, for appellees.

PALMORE, Justice.

The question in this case is whether a licensed ophthalmic dispenser may fit contact lenses pursuant to a prescription from but not under the direct supervision of a physician, osteopath or optometrist. Cf. KRS 326.060. Our conclusion is that the statute very clearly forbids it.

KRS Ch. 326 (c. 27, Acts of 1954) defines the practice of ophthalmic dispensing, establishes a Board of Ophthalmic Dispensers, and requires the licensing of practitioners. KRS 326.060 provides as follows (emphasis added):

"326.060. Dispenser not to examine or treat eyes—Fitting of contact lenses.— Nothing in this chapter shall be construed to authorize or permit any opthalmic dispenser to hold himself out as being able to, or to either offer, undertake or attempt, by any means or method, to examine or exercise eyes, *to fit contact lenses,* or to diagnose, treat, correct, relieve, operate or prescribe for any human ailment, deficiency, deformity, disease, injury, pain or physical condition except that an ophthalmic dispenser holding a license as such issued hereunder *may fit contact lenses under the supervision of a physician, osteopath or optometrist.*"

The complaint in this action was initiated on the relation of the Kentucky Board of Optometric Examiners. Among other things, it is alleged that certain of the appellees are unlawfully engaging in the practice of optometry. The Kentucky Board of Ophthalmic Dispensers is an intervening defendant-appellee taking the position that the activities of its co-appellees are within the scope of the practice of ophthalmic dispensers and are not unlawful.

The practice of optometry is defined by KRS 320.210(2) as follows (emphasis add-

ed): "the employment of any means other than the use of drugs, medicine or surgery *to examine the human eye,* to determine the visual efficiency of the human eye, or to determine the powers or defects of vision; the prescribing, *providing, furnishing,* adapting, using or employing lenses, prisms, *contact lenses,* visual training, orthoptics, ocular exercise or any other means or device other than the use of drugs, medicine or surgery for the aid, relief or correction of vision."

Construing KRS Ch. 320 and 326 together, unquestionably the providing and fitting of contact lenses without a license to practice optometry violates KRS Ch. 320 unless it is authorized by KRS Ch. 326.060, which in so many words says that a licensed ophthalmic dispenser may fit contact lenses only "under the supervision of a physician, osteopath or optometrist."

It is not necessary for us to describe in detail the procedures carried out by ophthalmic dispensers in the fitting of contact lenses for their customers, because the question is not what they do, whether it is simple or complex, whether they are capable of doing it, whether it is a convenient or standard practice, or whether various prescribing physicians and optometrists regard it as safe and convenient, but whether they actually do it under supervision, as the statute explicitly requires. In this vital respect, suffice it to say that it is very clear from the testimony of the appellee Baker that in the usual instance he never has any communication whatever with or from the prescribing doctor except through reading the prescription presented to him by the patient and, after some four or five weeks during which the process of measuring for, procuring, grinding and fitting the lenses to his eyes has been completed, sending him back "to have the doctor check them to see if they are all right." Whether the patient does in fact return to the doctor, as so recommended, is his own responsibility. In Baker's words, "I would recommend it. Whether they went back or not, that's up to them."

It seems to us that all of the argument in this case is transcended by one simple question and answer appearing in the Baker deposition, as follows:

Q– "Did you perform these services that you have mentioned or the steps that you took on those four visits, did you render those services under the supervision of either a medical doctor or an optometrist?"

A– "No. I fit those lenses under the Kentucky State statutes that allow me to fit contact lenses."

Unfortunately, if he read the statutes he did not read them very carefully.

The case is of first impression in Kentucky but our statutes seem quite clear without help from other jurisdictions. The decisions cited by appellees as supporting their position are not helpful, because neither of them involved a statute comparable with KRS 326.060.[1]

We are of the opinion that a prescription beforehand and an inspection afterward do not under any reasonable definition of the word amount to "supervising" the process of fitting contact lenses.[2]

---

1. "Nowhere in our law is there any reference to contact lenses." State Board of Optometry v. Chester, 251 Miss. 250, 169 So.2d 468, 471 (1964). "We think it is apparent from an examination of our statutes defining the practice of optometry and the business of a dispensing optician that the General Assembly has not expressly authorized either the optometrist or the optician to fit contact lenses to the human eye, but that the general terms of the statutes governing both are broad enough to authorize the optometrist to do so and to authorize the dispensing optician to do so upon prescription of a physician, oculist or optometrist." High v. Ridgeway's Opticians, 258 N.C. 626, 129 S.E.2d 301, 303 (1963).

2. Of additional significance, we think, is that the return visit to the prescribing physician or optometrist does not necessarily take place. If it does not, the work of the

Though it is stoutly argued that this practice has been going on for years, that doctors "cannot take the time to do the mechanical things now done by ophthalmic dispensers in the fitting of contact lenses", and that "the public will be deprived of contact lenses" if the judgment of the trial court is not affirmed, the statutory intent is too plain to be upset by judicial construction. It is strictly a legislative matter.

The judgment is reversed with directions that a new judgment be entered in accordance with this opinion.

All concur except STERNBERG, J., who did not sit.

ophthalmic dispenser has been completed without any participation by a physician or optometrist except for the initial writing of a prescription. Surely the prescribing physician or optometrist would be surprised to learn, in such a case, that the fitting process had been carried out under his "supervision" and that he might therefore be responsible for it.