18701

C. D. MELTON, Jr., J. Dan Gosnell, E. W. Ligon, N. A. Ridgeway, Sr., Henry Cohen, Harold W. Minton, Harry Simon, J. Hugh Jackson, Mabry Vannerson and M. L. Whaley, on behalf of themselves and all others similarly situated, Appellants, v. W. C. EZELL, C. C. Johnson, Ned P. Hobbs, Luther B. Elmgren and Henry V. Sawyer, constituting The South Carolina Board of Examiners in Optometry, Respondents.

(156 S. E. (2d) 871)

184

*E. Windell McCrackin, Esq.,* of Myrtle Beach, *for Appellants,*

*Messrs. McLain, Sherrill & Wilkins,* of Columbia, and *Lyles & Lyles,* of Spartanburg, *for Respondents,*

*Messrs. Vandiver, Barwick & Bentley* and *M. Cook Barwick,* of Atlanta, Georgia, *for Guild of Prescription Opticians of America, Inc., as Amicus Curiae,*

September 7, 1967.

BRAILSFORD, Justice.

This action for declaratory judgment was brought by plaintiffs, who are licensed opticians in this State, against the members of The South Carolina Board of Examiners in Optometry. According to the complaint, the declaration sought by plaintiffs is·that, as opticians, they may lawfully fill prescriptions for contact lens and use the keratometer [1] in so doing. However, the only justiciable controversy disclosed by the evidence turns upon whether an optician is authorized to furnish and adapt contact lenses to a person who presents to the optician a physician's prescription for ordinary spectacle lenses and an authorization from the physician, which directs the optician to take necessary measurements to furnish and adapt the lenses, including curve alterations, and to train the patient in the use and handling of them, the patient to return to the physician, when this has been accomplished, for "verification of prescription and lens fit" and, afterward, to the optician "for correction as necessary."

The record includes only the testimony of E. W. Ligon, an optician plaintiff, as to the procedure followed by him in furnishing contact lenses under such an authorization. We agree with the master and circuit judge that such procedures constitute the practice of optometry as defined by Section 56-1051, Code of 1962, especially sub-paragraph (5) thereof, which expressly provides that one engaged in prescribing or fitting contact lenses shall be deemed to be practicing optometry.

It is quite clear that Mr. Ligon undertakes to procure and fit contact lenses for persons who present to him a physician's authorization and a spectacle lens prescription. After issuing the authorization, the physician ordinarily does not see the patient again until the lenses have been fitted by the optician. During the fitting period of about ten days, the

[1] An instrument for measuring the curvature of the cornea.

patient is under the exclusive supervision and care of the optician. If a lens is too tight or too loose, the optician either adjusts it or orders another lens. If the patient for any reason cannot wear the lenses, the optician accepts them back and makes no charge. When, under the instructions of the optician, the patient has learned to wear the lenses comfortably, he is returned to the physician for an examination. The physician only checks the end result. If a correction in the fit of the lenses is needed, the patient is sent back to the optician.

Counsel for plaintiffs rely upon expert testimony that the fitting of contact lenses involves the entire process from the patient's initial consultation with, and examination by, the physician to the end result of satisfactorily adapted lenses. Since the entire multiphased process is not carried out by the optician, counsel contends that he is not fitting contact lenses within the statutory definition of the practice of optometry. The very language of the statute shows that the legislature did not use the term in such a broad sense. A person shall be deemed to be practicing optometry if he shall "prescribe *or fit* contact lenses." Section 56-1051(5), Code of 1962. It is abundantly clear that Mr. Ligon is engaged in the process of fitting such lenses, which, as an optician, the statute prohibits him from doing. That Mr. Ligon, rather than the referring physician, is the contact lens practitioner is indicated by the authorization under which he operates, the testimony as to the services which he performs, and the fee which he charges, *i. e.,* $125.00 for his services and for a pair of contact lenses, which cost him about $7.00, as compared with a fee of $15.00 to $25.00 charged by the physician.

There are decisions, *pro* and *con,* in this general field from other jurisdictions. See Annot., 88 A. L. R. (2d) 1290, 1309. However, these decisions are of little value as precedents because none involved the specific statutory classification of fitting contact lenses as the practice of optometry, which is the controlling language of our statute. The wis-

dom of this classification is strictly a legislative question. We are satisfied that the activity, which is detailed in the record, amounts to the unauthorized practice of optometry as defined by the statute, and that plaintiffs are not entitled to the declaration which they seek. This disposes of the appeal on the merits. We need not consider the other questions stated in appellants' brief and express no opinion thereabout.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.

