**STATE ex rel. STATE BOARD OF EXAMINERS IN OPTOMETRY, Plaintiff,**

**v.**

**Edwin P. J. KUHWALD, Defendant.**

Court of Chancery of Delaware, New Castle.

Submitted Dec. 17, 1976.

Decided Feb. 22, 1977.

Charles Snyderman, Wilmington, for plaintiff.

Henry A. Wise, Jr., Wilmington, for defendant.

HARTNETT, Vice Chancellor.

Plaintiff filed a Complaint for Injunction to enjoin Defendant from Engaging in the practice of optometry.

Extensive discovery was taken and the parties agreed to submit the matter to the Court on the basis of the Record before the Court.

The pertinent facts are not disputed by the parties.

Defendant is an optician who supplies contact lenses pursuant to a prescription written by an ophthalmologist. After receiving the prescription from the ophthalmologist, Defendant performs certain acts in examining and measuring the eye and obtaining data necessary for the preparation of the contact lenses. The lenses are actually prepared by another party (a laboratory) to the specifications of Defendant. Defendant fits the contact lenses and instructs the wearer in their use.

In fitting the wearer, Defendant makes use of the prescription written by the ophthalmologist which shows the refractive error or correction for spectacles. He uses certain instruments including a corneal microscope, keratometer and keratascope. He also inserts a fluroesciein dye under the eyelid. Defendant also takes the patient's medical history although it presumably has been already taken by the ophthalmologist.

In order to obtain the data necessary for the Defendant to order the contact lenses from the laboratory certain measurements and computations are made by Defendant.

Defendant also instructs the wearer in the procedures for handling, inserting and removing the contact leases. Defendant also advises the wearer to contact him by telephone if any problems occur and to go back to the ophthalmologist for a checkup after he is able to wear the contact lenses for 9 hours. Many patients return to their ophthalmologist, some do not.

Defendant is licensed as an optician but is not licensed as an optometrist.

There was no evidence presented to show that Defendant's acts constituted any danger to the health, safety or welfare of the public. In fact, there was testimony from at least one ophthalmologist that the activities of the Defendant did not in fact constitute any danger to the public.

In arguing their positions, both parties have cited numerous cases, most of which construe statutes of other jurisdictions. All of the cited statutes differ from the Delaware statutes relating to this matter. Many of the cases cited, therefore, are not pertinent to an understanding of the Delaware statutes.

## I

A threshold question is whether this Court has jurisdiction to entertain this suit.

Twice before the Delaware Supreme Court has struck down attempts to enjoin the Defendant from fitting contact lenses.

In the first case, *Delaware Optometric Corp. v. Sherwood et al.*, Del.Supr., 36 Del.Ch. 223, 128 A.2d 812 (1957), the Delaware Supreme Court held that this Court lacked lacked jurisdiction to grant the relief prayed for because the Plaintiffs, who were licensed optometrists, had no property rights which would enable them to enjoin the defendants from fitting contact lenses.

In the second case, *Moss et al. v. Kuhwald*, Del.Supr., 38 Del.Ch. 336, 151 A.2d 516 (1959) the Delaware Supreme Court held again that this Court lacked jurisdiction to grant the relief sought in that suit because only the Attorney General could bring an action against persons fitting contact lenses who were not licensed as optometrists.

The Court further ruled that enforcement of the optometry law was wholly within the jurisdiction of the criminal courts, but that if repeated violations constituted a public nuisance endangering the public health or safety, the nuisance could be abated at the suit of the Attorney General.

After these cases, however, in 1964, the Delaware General Assembly enacted an amendment to *24 Del.C. § 2119* which reads:

The Court of Chancery shall have jurisdiction to issue temporary restraining orders, preliminary injunctions and permanent injunctions to enjoin any violation of this chapter in actions brought by the State Board of Examiners in Optometry, the Delaware Optometric Association, Inc., or the Attorney General of the State. (*54 Del.Laws, Ch. 332*)

The additional jurisdiction was conferred pursuant to Article IV § 17 of the Delaware Constitution.

■ It, therefore, seems clear that this Court now has jurisdiction to entertain an action seeking to enjoin a violation of Chapter 21, Title 24, Delaware Code, the Delaware Optometry Law.

## II

The next question to be answered is: Do the acts of Defendant constitute the practice of optometry as defined in *24 Del.C. § 2101*?

24 Del.C. § 2101(a) now provides:

The practice of optometry for the purpose of this chapter is defined to be:

(1) The diagnosis *and/or* the examination of the human eye and its appendages; *and/or*

(2) The employment of any objective or subjective means or methods for the purpose of determining the refractive powers of the human eyes *and/or* any visual, muscular or anatomical anomalies of the human eyes and their appendages, or any ocular deficiency; *and/or*

(3) The prescribing *and/or* application of lenses, prisms, contact lenses, orthoptics (visual training), or any physical, mechanical or psycho-visual therapy for the correction, remedy or relief of any insufficiencies or abnormal conditions of the human eyes and their appendages.

In 1974 the Delaware General Assembly substituted the words "and/or" for the work "and" where indicated by the italics (59 Del.L. Ch. 250).

The use of the words "and/or" is forbidden to a careful draftsman and is always to be avoided by a drafter of statutes. See DICKERSON: *Legislative Drafting* (Little, Brown & Co. 1954) p. 129; ALLEN: *The Literary Fraction "And/or"*, 33 Mass.L.Q. 66 (1948); *An And/or Symposium*, 18 A.B. A.J. 574 (1932); *State v. Getty Oil Co.*, Del.Super., 305 A.2d 327 at 332 (1973).

■ Nevertheless the substitution by the Delaware General Assembly of the words "and/or" for the word "and" must necessarily indicate that the General Assembly intended in 1974 to substitute "or" for "and", however absurd the result may be. It must also indicate that the General Assembly, prior to 1974, did not intend "and" to mean "or" in *24 Del.C. § 2101(a)*. *State v. Klosowski*, Del.Super., 310 A.2d 656 (1973).

By its terms the Statute, after the 1974 amendment, defines the ". . . application of contact lenses . . ." as the practice of optometry.

The meaning of the statute is plain and unequivocable however obscurely the amendment may have been proposed and enacted.

The word application is defined:

"The act of laying on or bringing into contact" Webster's Third Int'l Dictionary (G. C. Merriman Co. 1971)

The facts clearly show that Defendant does at least apply contact lenses.

■ *24 Del.C. § 2101(a)* (the Optometry Act) standing alone, after the 1974 amendment, would, therefore, in my opinion, prohibit Defendant from applying contact lenses.

See *N.J. State Bd. of Optometrists v. Reiss*, 83 N.J.Super. 47, 198 A.2d 816 (1964); and *Melton v. Ezell*, 250 S.C. 183, 156 S.E.2d 871 (1967). These cases are, however, based on statutes which are somewhat different from the Delaware statutes.

## III

The next question to be considered is whether there are any statutory exceptions available to the Defendant.

We must consider two separate sections of *Title 24, Delaware Code*. The first is *24 Del.C. § 2117* (Delaware Optometry Act) which states:

Nothing in this chapter shall be construed to prevent the sale and/or application of spectacles in the ordinary course of trade, provided no part of this chapter is violated by this exemption.

Those persons having the degree of Doctor of Medicine or Doctor of Osteopa-

thy and licensed to practice medicine and surgery in this State under Chapter 17 of this title shall be exempt from this chapter.

Section 2117 was revised and reenacted in 1974 (59 Del.L. Ch. 250). The 1974 revision inserted the words "under Chapter 17 of this title" in the second paragraph. Chapter 17 is the Medical Practice Act.

The other section to be considered is 24 Del.C. § 1703(e)(7) (Medical Practice Act) which states:

(e) Nothing contained in this chapter shall prevent: . . .

(7) Any person from rendering medical, surgical, or health services, if such services are rendered by such person under the supervision and control of a physician or surgeon, licensed under this chapter. Nothing herein shall be construed to change or modify legitimate practices currently prevailing in the practice of optometry or ophthalmology.

Section 1703 was enacted in its present form in 1971 by 58 Del.L., Ch. 212 as *24 Del.C. § 1731(d)(6)*. It was subsequently reenacted in 1976 by 60 Del.L. Ch. 462 as *24 Del.C. § 1703(e)(7)*. There was no change in language between the 1971 enactment and the 1976 reenactment.

■ The two sections of *Title 24 Delaware Code* must be read together because of the settled rule of law that when the legislature enacts a statute which specifically refers to an existing statute, the later act beings into itself by reference, the terms of the earlier act. The precepts and terms to which reference is made are to be considered and treated as if they were incorporated into and made a part of the referring act, just as completely as if they had been explicitly written therein. *Pacific First Federal Savings & Loan Assn. v. Pierce Co. et al.*, 27 Wash.2d 347, 178 P.2d 351 at 355 (1947); *Powell v. Levy Court of Kent County*, Del.Supr., 236 A.2d 374 (1967) citing *Perkins v. Winslow*, Del.Sup., 3 W. W. Harr. 188, 133 A. 235 (1920).

As the Delaware Supreme Court said in *Powell* :

"It is the rule that a statute may by reference adopt a part or all of another statute which will have the same effect as though the adopted statute had been written into it."

See also *Hassett v. Welch*, 303 U.S. 303 at 315, 58 S.Ct. 559 at 565, 82 L.Ed. 858 at 867 (1938).

These two sections must also be read together because *24 Del.C. § 1703(e)(7)* standing alone is ambiguous and the two sections are in *pari materia*. Chapter 17 and Chapter 21 are chapters of the same title of the Delaware Code and both deal with the licensing of health personnel. See *2A Sutherland Statutory Construction* (Rev. 3rd Ed.) § 51.03. *N.J. State Board of Optometrists v. Reiss*, 83 N.J.Super. 47, 198 A.2d 816 (1964); *Guild of Prescription Opticians v. State Bd. of Exam.*, 106 N.J.Super. 259, 255 A.2d 282 (1969); *Day v. Inland Empire Optical, Inc.*, 76 Wash.2d 407, 456 P.2d 1011 at 1018 (1969).

■ When *24 Del.C. § 2117* and *24 Del.C. § 1703(e)(7)* are read together it is clear that the General Assembly intended to exempt from the provisions of the Optometry Act a person who applies contact lenses as long as he acts under the supervision and control of a licensed ophthalmologist. See *State Board of Optometry v. Chester*, 251 Miss. 250, 169 So.2d 468 (1964).

■ I, therefore, hold that the acts of Defendant do constitute the application of contact lenses which would cause Defendant to be deemed to be practicing optometry under *24 Del.C. § 2101(a)(3)* if he was not exempted from the provisions of the Act by some other statutory exception.

I further hold that *24 Del.C. § 2117*, when read with *24 Del.C. § 1703(e)(7)*, does give Defendant an exemption if his services are rendered under the supervision and control of a physician or surgeon.

The evidence in the Record is that the services of the Defendant are rendered under the supervision and control of ophthalmologists. The ophthalmologists so testified and their testimony must be given great weight. The question of whether De-

fendant performs medical services under the supervision and control of medical doctors is primarily a medical question. See *Roe v. Wade,* infra, which is discussed later. If Defendant acts independently or outside the supervision and control of a physician, he would be in violation of *24 Del.C. § 2101(a)* as it is now written. There is no evidence in the record to show, however, that Defendant has acted other than under the supervision and control of a physician.

The case of *State v. Kuzirian,* 228 Or. 619, 365 P.2d 1046 (1961) would restrict an optician's services to those performed under the direct supervision of a doctor. This case, however, was decided in 1961, long before the case of *Roe v. Wade* (supra). Also, the word "direct" does not appear in the Delaware Statute.

In any case, the test of what constitutes medical supervision under the doctrine of *Roe v. Wade* is primarily the judgment of the doctor, as will be discussed later.

### IV

The next argument to be disposed of is the argument that the last sentence of *24 Del.C. Chapter 17, § 1703(e)(7)* (Medical Practice Act) precludes an exemption for Defendant. That language reads:

"Nothing herein shall be construed to change or modify legitimate practices currently prevailing in the practice of optometry or ophthalmology."

This language does not deny Defendant an exemption, however, because when this language was adopted in 1971 the acts of Defendant were not prohibited by the then existing wording of *24 Del.C. § 2117* (Optometry Act).

If *24 Del.C. § 2101(a)* is read as it existed in 1971, it is clearly seen that the acts of the Defendant, prior to the 1974 amendment, did not constitute a violation of *24 Del.C. § 2101(a),* the optometry practice statute.

*24 Del.C. § 2101(a), prior to 1974,* read:

The practice of optometry for the purpose of this chapter is defined to be:

(a) The diagnosis and/or the examination of the human eye and its appendages; *and*

(2) The employment of any objective or subjective means or methods for the purpose of determining the refractive powers of the human eyes and/or any visual, muscular or anatomical anomalies of the human eyes and their appendages, or any ocular deficiency; *and*

(3) The prescribing *and* application of lenses, prisms, contact lenses, orthoptics (visual training) or any physical, mechanical or psycho-visual therapy for the correction, remedy or relief of any insufficiencies or abnormal conditions of the human eyes and their appendages. (emphasis added by the Court)

In order for there to have been a violation by the Defendant of *24 Del.C. § 2101(a)* as it was written prior to 1974, it would have been necessary for Defendant to have engaged in all three of the activities enumerated by (1), (2) and (3). The legislative history of the substitution of "and/or" for "and", as discussed previously, clearly shows that the General Assembly did not intend "and" to mean "or" prior to 1974. *State v. Klosowski,* Del.Super., 310 A.2d 656 (1973). Contra: *Fields v. District of Columbia,* D.C.App., 232 A.2d 300 (1967).

The evidence before the Court does not substantiate a finding that Defendant performed all the acts set forth by *24 Del.C. § 2101(a)* as it was written prior to 1974.

This is clear from a reading of the decision of the Supreme Court of Kansas in *State ex rel Londerholm v. Doolin,* 209 Kan. 244, 497 P.2d 138 (1972). In that case the facts were much like the facts in the case before us. The Court set forth in great detail the acts performed by the Defendant. Without going into similar detail it is sufficient to say that Defendant, Kuhwald, performed almost exactly the same acts as did Defendant, Doolin, in the Kansas case. The Kansas Supreme Court held that the act of fitting contact lenses by an optician pursuant to a prescription from an ophthalmologist did not constitute refraction or the determining of the refractive powers of the

human eyes. This was one of the elements necessary for the practicing of optometry under *24 Del.C. § 2101*, as that Statute was written prior to 1974. See also *Florida Ass'n of Dispens. Opt. v. Florida St. Bd. of Opt.*, Fla.Supr., 238 So.2d 839 (1970); *High v. Ridgeway's Opticians*, 258 N.C. 626, 129 S.E.2d 301 (1963); *State Board of Optometry v. Chester*, 251 Miss. 250, 169 So.2d 468 (1964). In all these cases, however, statutory provisions somewhat different than Delaware's were involved.

A contrary view is expressed by the New Jersey Superior Court in *N.J. State Bd. of Optometrists v. Reiss*, 83 N.J.Super. 47, 198 A.2d 816 (1964) and by the Missouri Supreme Court in *State ex inf. Danforth v. Dale Curteman, Inc.*, 480 S.W.2d 484 (1972). Both cases however were based on statutes which differ from the Delaware statute.

For the reasons stated, the last sentence of *24 Del.C. § 1703(e)(7)* therefore does not preclude an exemption for defendant from the provisions of the Optometry Act (24 Del.C. § 2101[a]), since the acts performed by him were legitimate practices in 1971.

### V

■ For the reasons discussed above, I have held that Defendant is exempted from the provisions of *24 Del.C. § 2101(a)* by reason of the provisions of *24 Del.C. § 2117* and *24 Del.C. § 1703(e)(7)* when read together.

■ Even if *24 Del.C. § 2117* and *24 Del.C. § 1703(e)(7)*, when read together, do not give Defendant an exemption from *24 Del.C. § 2101(a)*, nevertheless, he would be entitled to continue his activities because an attempt by the Delaware General Assembly to absolutely prohibit Defendant from providing medical services under the supervision and control of a physician would be unconstitutional under the doctrine of law set forth by the U.S. Supreme Court in the case of *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *Roe v. Wade* involved the question of whether the State could prohibit a woman from obtaining an abortion even though she and her physician decided she should have an abortion. The rationale of the Court was predicated on the assumption that the State could not infringe on a medical decision made by a physician and a patient in the absence of important State interests in regulation. The Court said:

"This means, on the other hand, that, for the period of pregnancy prior to this 'compelling' point, (viability) the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State." 410 U.S. at 163, 93 S.Ct. at 732, 35 L.Ed.2d at 183.

"The decision (*Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201) vindicates the right of the physician to administer medical treatment according to his professional judgment up to the points where important state interests provide compelling justifications for intervention. Up to those points, the abortion decision in all its aspects is inherently, and primarily, a medical decision, and basic responsibility for it must rest with the physician. If an individual practitioner abuses the privilege of exercising proper medical judgment, the usual remedies, judicial and intraprofessional, are available." 410 U.S. at 166, 93 S.Ct. at 733, 35 L.Ed.2d at 184.

The U.S. Supreme Court has, therefore, in *Roe v. Wade* and in *Doe v. Bolton* (supra) held that a patient and her physician must constitutionally be permitted to decide whether to abort a pregnancy (at least up to the trimester) free from the interference of the State. Such a decision is to be predicated on medical considerations only. This is deemed by the Supreme Court to be an aspect of the patient's constitutional right of privacy.

In *Roe v. Wade* (supra) the U.S. Supreme Court further held:

"Where certain 'fundamental rights' are involved, the Court has held that reg-

ulation limiting these rights may be justified only by a 'compelling state interest' (citations) and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake (citations)." 410 U.S. at 155, 93 S.Ct. at 728, 35 L.Ed.2d at 178.

In our case there has been no showing of a compelling State interest in prohibiting a physician from utilizing an optician under his supervision and control to help him furnish contact lenses to a patient. There has been no evidence to show that Defendant's acts constituted any danger to the health, safety or welfare of the public. In fact the affirmative testimony of ophthalmologists show that Defendant's activities under the supervision and control of ophthalmologists do not constitute any danger to the health or safety of the public.

In *Roe v. Wade* (supra) the Supreme Court reaffirmed the doctrine that the constitutional right to privacy is not absolute and is subject to some limitations. At some point, it is agreed, the State interests as to protection of health and medical standards become dominant. *Roe v. Wade*, 410 U.S. at p. 155, 93 S.Ct. at p. 727, 35 L.Ed.2d at p. 178.

The Supreme Court, however, has clearly indicated that it must be left to the physician and his patient to decide on a course of medical treatment or action in the absence of any legitimate State concern over public health and safety.

In our case, Plaintiff has not shown that the State's interests in the protection of health, and medical standards, are being violated.

Many of the ophthalmologists testified that Defendant's services were superior to those rendered by optometrists or even by ophthalmologists. There was no testimony as to any existing or potential health hazard.

The Plaintiff, therefore, has not met the burden of showing that any State interest is paramount to the right of one seeking contact lenses to consult an ophthalmologist and to have the ophthalmologist, in his medical judgment, designate Defendant to act under the supervision and control of the ophthalmologist, to actually apply the contact lenses.

The Plaintiff has also not met the burden of showing that Defendant is not acting under the supervision and control of an ophthalmologist.

The prayers for injunctive relief are therefore denied.

So Ordered.